UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JEFFREY J. HENSON and<br>JENNY HENSON,<br><div align=center>*Plaintiffs*,</div><br>*vs.*<br>ALAN LeBOVIDGE, in his official capacity<br>as Massachusetts Commissioner of Revenue;<br>CHIEF ADMINISTRATIVE JUSTICE OF<br>THE MASSACHUSETTS TRIAL COURT;<br>THE UNITED STATES OF AMERICA;<br> and SHERYL PATE,<br><div align=center>*Defendants*.</div> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | *CIVIL ACTION*<br><br>No.<br><br>04 - 10514NG |

MEMORANDUM OF LAW IN SUPPORT OF

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I.    FACTUAL BACKGROUND

On September 9, 1987, Jeff and Sheryl were married in the state of North Carolina. *Verified Complaint* ¶ 10. Jeff and Sheryl lived in North Carolina during the entire time (approximately two years) that they lived together as husband and wife, from September of 1987 until December of 1989. *Verified Complaint* ¶ 11. While Jeff and Sheryl were living together as husband and wife, on or about February 2, 1989, Sheryl delivered a baby girl, Christine (the "child"). The child was born in North Carolina and, until Sheryl's unannounced departure from North Carolina with the child in December of 1989, Jeff provided financial support for the child's needs and care, but only did so in North Carolina. Jeff has never voluntarily provided financial support for the child since her mother, Sheryl, departed for Massachusetts with the child, unilaterally, unannounced and without the assent of Jeff. *Verified Complaint* ¶ 12.

Shortly after Sheryl left North Carolina with the child, on December 22, 1989, Sheryl

brought a separate support action against Jeff in the Commonwealth of Massachusetts. *Verified Complaint* ¶ 13. On or about May 7, 1990, a "Judgment of Separate Support" was issued by the Norfolk Division of the Probate and Family Court Deparmtne of the Trial Court of the Commonwealth of Massachusetts ("Norfolk Probate Court"). This is the sole order or judgment of a Massachusetts court that purports to obligate Jeff to make support payments for the benefit of Sheryl and/or the child, which , by its terms, requires Mr. Henson to "pay to the Commonwealth of Massachusetts $100.00 dollars forthwith for support of said minor child and the further sum of $100.00 dollars weekly on each Friday hereafter commencing on May 18, 1990. Said sum is to be paid to DOR/CSE ....". *Verified Complaint* ¶ 14 & <u>Exh. C</u> thereto at ¶ 6. "DOR/CSE" is an acronym for the Massachusetts Department of Revenue, Child Support Enforcement Division. *Verified Complaint* ¶ 14. Mr. Henson did not appear or otherwise participate in any way in the Massachusetts court at the time of, or prior to, that court's issuance of the separate support judgment. *Verified Complaint* ¶ 15 and <u>Exh. C</u> thereto.

On March 14, 1991, Sheryl filed a divorce action against Jeff in the Norfolk Probate Court. *Verified Complaint* ¶ 16. Sheryl's divorce complaint of record – including any applicable amendments - <u>does not</u> request that the Massachusetts court "order a suitable amount for support of the plaintiff and minor child." *Verified Complaint* ¶ 17 and <u>Exh. D</u> thereto at ¶ 6. On or about September 4, 1991, the Norfolk Probate Court issued a "Judgment of Divorce Nisi" upon Sheryl's divorce complaint, which judgment ***does not*** purport to ***establish a child or spousal support obligation*** against Jeff. *Verified Complaint* ¶ 18 and <u>Exh. E</u> thereto.

Massachusetts has requested assistance from both the IRS and the State of North Carolina to collect what it alleges is in excess of one hundred thousand dollars ($100,000.00) in child support owed by Jeff to it, based upon the separate support judgment *Verified Complaint* ¶ 19 and <u>Exh. C</u> thereto  Jeff and his current spouse, Jenny Henson, filed joint federal income tax

returns for 1999 and 2000 and were owed refunds for those years of $8,411.00 and $5,367.00, respectively; they also filed joint state income tax returns in the State of North Carolina for the years 1999 and 2000 and were owed refunds for those years of $2,561.00 and $1,019.00, respectively; they wish to file jointly for the three tax years 2001 through 2003, two tax years for which they are owed refunds. *Verified Complaint* ¶ 20.

Based upon the request of Massachusetts, the defendant IRS intercepted and turned over to Massachusetts the federal income tax refund due Jeff and Jenny Henson for tax years 1999 and 2000, and did so based upon Massachusetts claim that Jeff owes it back child support under the separate support judgment. *Verified Complaint* ¶ 21 and <u>Exh C</u> thereto. Massachusetts is believed to have pending with the IRS a request that it intercept and pay to Massachusetts all future income tax refunds owed to Jeff and Jenny Henson based upon Massachusetts claim that Jeff owes it back child support under the separate support judgment *Verified Complaint* ¶ 21 and <u>Exh C</u> thereto.

At the request of Massachusetts, Jeff's state of domicile and employ, North Carolina, has taken action against Jeff's insurance brokerage license and drivers license by suspending, revoking or refusing to renew same, and has done so to induce or coerce Jeff into satisfying the child support obligation that Massachusetts claims under its separate support judgment *Verified Complaint* ¶ 22 and <u>Exh. C</u> thereto. In addition Massachusetts has published to the major credit reporting agencies that Jeff has a non-dischargeable child support judgment against him pursuant to which it claims he owes Massachusetts over $100,000. *Verified Complaint* ¶ 23 and <u>Exh. C</u> thereto.

In December of 2003, Jeff and Jenny Henson's monthly payment on their home mortgage loan significantly increased pursuant to the terms of their outstanding mortgage note. They are now unable to afford the monthly mortgage payment and, despite significant equity in their

3

home, are unable to refinance their mortgage to an affordable monthly payment, solely because Jeff's credit report shows that he owes Massachusetts over $100,000 for back child support. *Verified Complaint* ¶ 24.

In September of 2003, Jeff specially appeared and filed with the Norfolk Probate Court a motion for relief / to vacate the separate support judgment; at a hearing on an *ex parte* motion for an order of notice to give all interested parties notice and opportunity to be heard on said motion for relief / to vacate, the Norfolk Probate Court indicated a certain hostility to the motion for relief/to vacate stating to plaintiff's counsel "who did he think was supporting his child all these years …[and] can't I award child support retroactively to the birth of the child, anyway?" *Verified Complaint* ¶ 25 and Exh. C thereto.

Upon information and belief, it is the official policy or custom of the Massachusetts Department of Revenue Child Support Enforcement Division to aggressively pursue child support collection on behalf of Massachusetts residents against non-Massachusetts residents, without regard or with deliberate indifference to whether Massachusetts has any colorable basis for the exercise of personal jurisdiction over the non-resident defendant. Counsel for plaintiffs presently represents another child support obligor against whom DOR/CSE brought a paternity action on behalf of a Massachusetts resident obligee. As in this case, that obligor swears that he has never resided or done business in Massachusetts and that he was not served with process while within its borders. *Verified Complaint* ¶ 26.

Upon information and belief, the Probate and Family Court Department of the Massachusetts Trial Court has a policy or custom of approving or issuing child support default judgments against nonresident obligors without regard, or with deliberate indifference, to whether Massachusetts has any colorable basis for the exercise of personal jurisdiction over such nonresident defendants. *Verified Complaint* ¶ 27.

4

II.    ISSUE PRESENTED

Should this court preliminarily enjoin the defendants Alan LeBovidge and the United States of America as requested?

III.    ARGUMENT

Preliminary Injunction Standard

The standard for issuance of a preliminary injunction is whether the party seeking such relief is (1) likely to prevail on the merits of his claim, (2) likely to suffer irreparable harm in the absence of such preliminary relief, (3) likely to suffer greater harm in the absence of such relief than the harm that can be fairly attributable to the granting of the injunction, and (4) seeking relief which will not adversely affect the public interest. Ross-Simons of Warwick, Inc. v. Baccarat, Inc. , 102 F.3d 12, 15 (1st Cir. 1996); Fed. R. Civ. P. 65(a).  Should each of these elements be demonstrated, the court should exercise its discretion to grant the requested relief. Cf. Rosario-Urdaz v. Rivera-Hernandez, 2003 U.S. App. LEXIS 23994, *7 (1st Cir. 2003)(Reversing denial of preliminary injunction and remanding for evidentiary hearing.) "Likelihood of success is the touchstone of the preliminary injunction inquiry." Phillip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998).  However, a court "need not determine the outcome on the merits 'with absolute assurance.'" Water Keeper Alliance v. United States Dept. of Defense, 271 F.3d 21, 32 (1st Cir. 2001).

A.    Plaintiffs Are Likely to Succeed on the Merits of Their Claim That The Separate Support Judgment Is Void For Lack of Personal Jurisdiction Over the Plaintiff, Jeffrey J. Henson

[T]he judgment of a court lacking personal jurisdiction violate[s] the Due Process Clause of the Fourteenth Amendment ...." Burnham v. Superior Court, 495 U.S. 604, 609 (1990), citing Pennoyer v. Neff, 95 U.S. 714, 732 (1878).   The Constitution does no prevent a State's courts from exercising jurisdiction over a nonresident who is personally served with process while

temporarily in that State, even if the suit is unrelated to his visit. Burnham, supra, 495 U.S. at

608-622. However, that is not the case here. First, the returned summons in the separate support

action unequivocally indicates that Jeff was served by a North Carolina deputy sheriff while he

was within that state and not in Massachusetts. Exh. B to *Verified Complaint*. Second, the

verified complaint evidences that Jeff has never even been within the physical boundaries of

Massachusetts, hence, he could not have been served while physically present therein. *Verified*

*Complaint* at ¶ 9.

In International Shoe v. Washington, 326 U.S. 310 (1945), the Supreme Court set the

constitutional limitation for a state court's exercise of personal jurisdiction over non-residents in

cases, like this, were there is no in-state service.

> [D]ue process requires only that in order to subject a defendant to a
> judgment in personam, if he be not present within the territory of
> the forum, he have certain minimum contacts with it such that the
> maintenance of the suit does not offend 'traditional notions of fair
> play and substantial justice.'

Id. at 326. Personal jurisdiction may be general or specific. Philips Exeter Academy v. Howard

Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999). There can be no doubt from the facts set

forth in the verified complaint that Massachusetts lacks general jurisdiction over Jeff. *Verified*

*Complaint* at ¶¶ 12-18. Both presently, and at the time of Sheryl's separate support complaint, it

cannot be said that Jeff "maintained a continuous and systematic linkage with [Massachusetts]

...." Id. That leaves specific jurisdiction.

Under the facts of this case, any claim to specific jurisdiction fails the three-part inquiry

described by the First Circuit in Phillip Exeter, supra. First, "the claim that undergirds the

litigation [– Jeff's purported liability for the support of the child – does not] directly relate[] to or

arise[] out of [Jeff's] contacts with [Massachusetts]." Phillip Exeter, supra. His only contacts

with Massachusetts is the presence in this state of his former wife and the child. Jeff cannot be

adjudicated liable for child support merely because the child, and her mother are here. His liability for support must stem from his relationship to the child: for his having biologically fathered the child, or for having adopted the child or perhaps for being the presumptive father of the child (based upon the child's birth during Jeff and Sheryl's marriage). However, none of the activities necessary to create such a relationship between he and the child has ever taken place in Massachusetts. Jeff has never been in Massachusetts.

"Second, [the presence of the child and Sheryl in Massachusetts does not] constitute purposeful availment [by Jeff] of the benefits and protections afforded by the forum's laws." Phillips Exeter, supra. In a case also involving child support the Supreme Court rejected the argument that financial benefit to the nonresident defendant that resulted from his daughter's presence in the forum state for nine months out of the year was sufficient "purposeful availment" of the benefits of the laws of the forum state to confer personal jurisdiction. Kulko v. Superior Court, 436 U.S. 84, 94-95 (1978). As pointed out by the Court in Kulko, "[a]ny diminution in [the nonresident defendant's] household costs resulted, not from the child's presence in [the forum], but rather from her absence from [the defendant's] home." Id. at 95. Simply, Sheryl's "unilateral activity" in leaving North Carolina with the child in December of 1989, and moving to Massachusetts, "cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Jeff's only present contacts with the forum state, Massachusetts, is the presence here of his former spouse (Sheryl) and the child that was born to her during their marriage. *Verified Complaint* at ¶ 12. He has not voluntarily sent money or other forms of support to Massachusetts for either Sheryl or the child. *Verified Complaint* at ¶ 12 He did not assent to, or assist them in any way, in their move from North Carolina to Massachusetts, and did not even know of same until it was fait accompli. *Verified Complaint* at ¶ 12. When Sheryl filed the

7

separate support action that resulted in the separate support judgment (just some six months later) she and the child had been in Massachusetts less than a month. *Verified Complaint* at ¶ 13. Jeff's only contact with the Massachusetts when Sheryl brought the separate support action was that he had in-laws here, Sheryl's parents.

"The foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 446 U.S. 286, 297 (1980). Given Jeff's only ephemeral contacts with Massachusetts when Sheryl brought the separate support action, he could not reasonably anticipate having to defend such an action there. When he learned of the action he did not respond by participating in it in any way so as to be deemed to have consented to Massachusetts jurisdiction over him. In sum, the separate support judgment which forms the basis for the Commonwealth's claim that Jeff owes in excess of $100,000.00 in child support, offends the due process clause of the Fourteenth Amendment and is void, as a matter of law.[1]

B.    The Plaintiffs Will Suffer Irreparable Harm In the Absence of the Requested Relief.

The plaintiffs are on the brink of financial disaster because of the void Massachusetts judgment appearing on Jeff's credit report. Plaintiff's are likely to lose their house to foreclosure because of their inability to refinance, unless this court orders the defendant LeBovidge to immediately contact the major credit reporting agencies and withdraw or order stricken from Jeff's credit report, for the time being, the separate support judgment and all alleged support debt

---

[1] By seeking to collect on a judgment that does not comport with due process, the defendant LeBovidge also appears to be violating Title IV-D and regulations promulgated thereunder. 42 U.S.C. § 651 *et seq.* However, the Supreme Court has held that Title IV-D does not give individuals a federal right to force a state agency to substantially comply with Title IV-D. Blessing v. Freestone, 520 U.S. 329; 117 S. Ct. 1353; 137 L. Ed. 2d 569 (1997).

stemming from it. The action taken against Jeff's professional and drivers license at the request of Massachusetts further aggravate the Henson's financial situation. The financial disaster that looms for the Henson family should this court deny the requested relief would have long lasting effects including adverse affects on the plaintiffs' credit ratings well into the future.

This harm is irreparable with respect to the official capacity defendants (i.e. Mr. LeBovidge and the Chief Administrative Justice) because they are not "'persons' within the meaning of 42 U.S.C. 1983 with respect to actions for damages." Rosario-Urdaz v. Rivera-Hernandez, 2003 U.S. App. LEXIS 23994, *7 (1st Cir. 2003). Furthermore, they may be protected by Eleventh Amendment immunity. Id. As the First Circuit has recently said: "The unavailability of ... monetary damages against either the Commonwealth or the defendants in their official capacities goes a long way toward establishing irreparable injury." Id. at *8.

C.    The Balance of Harms Weighs In Favor of Granting the Requested Relief.

It is hard to imagine any significant harm that will be visited on these defendants should they be preliminarily enjoined as requested by the plaintiffs' motion. The are being requested to make some communications, and to cease their collection efforts on the judgment that is claimed to be void, pending resolution of this case.

D.    Granting the Requested Relief Will Not Adversely Affect the Public Interest.

In the context of attorneys fee awards in civil rights cases, the Court has said:

> Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit "'does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance.'" House Report, at 2 (quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968)). "If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." 122 Cong. Rec. 33313 (1976) (remarks of Sen. Tunney).

City of Riverside v. Rivera, 477 U.S. 561, 575 (1986); see Long Term Care Pharmacy Alliance v. Ferguson, 260 F. Supp. 282, 289 (D. Mass. 2003) ("Allegations of statutory violations implicate a different calculus because such violations inherently offend the public interest.")

IV.    CONCLUSION

For the foregoing reasons, plaintiffs, Jeffrey J. Henson and Jenny Henson, respectfully requests that this Honorable Court allow their MOTION FOR PRELIMINARY INJUNCTION and order the relief sought therein.

Respectfully submitted,
JEFFREY J. HENSON and
JENNY HENSON, *Plaintiffs*
By their attorney:


Paul J. Adams, BBO# 568173
LAW OFFICE OF PAUL ADAMS
21 Torrey Street
Brockton, MA 02301
Tel. (508) 583-2019


Dated: *February 20, 2004*