UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Jeffrey J. HENSON and
Jenny HENSON,

                    Plaintiffs,

v.

Alan LeBovidge as COMMISSIONER OF
REVENUE for the COMMONWEALTH OF
MASSACHUSETTS, CHIEF ADMINISTRATIVE
JUSTICE of the MASSACHUSETTS TRIAL
COURT, Sheryl PATE, and the UNITED
STATES of AMERICA,

                    Defendants.

CIVIL ACTION
NO. 04-10514-NG

**DEFENDANTS ALAN LEBOVIDGE, AS COMMISSIONER OF REVENUE
FOR THE COMMONWEALTH OF MASSACHUSETTS, AND CHIEF ADMINISTRATIVE
JUSTICE OF THE MASSACHUSETTS TRIAL COURTS'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AND IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

This memorandum is submitted in support of the defendants',

Alan LeBovidge, as the Commissioner of Revenue, and the Chief

Administrative Justice of the Trial Court ("State Defendants"),

Motion to Dismiss Jeffrey J. Henson and Jenny Henson's ("Henson"

or "Hensons") Verified Complaint ("Complaint"), and Opposition to

the Hensons' Motion for Preliminary Injunctive Relief.  The

Hensons seek review by this Court of the propriety of the state

court having issued orders affecting them where they allege that

Henson "has no minimum contacts" with Massachusetts, and claim,

1

on behalf of themselves and "all those similarly situated"[1], the state court's action violated their due process rights under 42 U.S.C. § 1982, and the Fourteenth Amendment to the Constitution of the United States of America.   Henson alleges that, as a result of these proceedings, he was wrongly ordered to pay child support and that these amounts were improperly deducted from his out-of-state income by the Massachusetts Department of Revenue Child Support Enforcement Division ("DOR/CSE").   The Hensons demand various equitable, declaratory, and injunctive relief (together with a demand for attorneys fees under 28 U.S.C. § 1988), with the goal of voiding the state court's action and excusing Henson from his state-imposed child support obligation. The complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).   The complaint against the State Defendants should also be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) because the Hensons have failed to state a basis for federal court jurisdiction[2].   Specifically, the Complaint should be dismissed for lack of jurisdiction

---

[1]Other than this statement, the Hensons have made no effort to file this action on behalf of any certified class.

[2]   *See Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998) (burden of showing jurisdiction lies with party invoking jurisdiction).   The standards for reviewing motions under Rule 12(b)(1) and Rule 12(b)(6) are similar, as the Court is required to "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiffs the benefit of all reasonable inferences."   *Id.*

because:  1) this Court lacks subject matter jurisdiction to sit in direct review of a state court judgment; 2) the Eleventh Amendment bars their claim; 3)the Hensons' attempt to represent "those similarly situated" is inoperative; 4) the state court is immune from suits of this nature; 5) this Court should abstain under the *Younger* abstention doctrine, 6) the Court should abstain from this domestic relations case in the Probate Court under the general principles of comity and federalism, and 7) the Judicial Defendants did not violate plaintiffs' right of access to courts or right to due process.  Accordingly, the Hensons have stated no facts or theory sufficient to support their claim for review in this Court and this action should be dismissed.

<u>FACTS</u>

The following facts are culled from the Complaint, and may be taken as true for the purposes of this Motion to Dismiss and Opposition to Motion for Preliminary Injunction. Complaint, pp. 1-10.

This action is brought pursuant to 42 U.S.C. § 1983, and seeks prospective declaratory and equitable relief to address what the Hensons claim are their due process rights under the Fourteenth Amendment to the Constitution of the United States. For all times relative to this action, the plaintiffs have lived in Shallotte, North Carolina.  The plaintiffs claim to never have been in, nor done business of any kind, in Massachusetts.

3

On September 9, 1987, Henson and his former wife, co-defendant Sheryl Pate ("Pate"), were married in North Carolina, where they lived as husband and wife from September 1987 until December 1989.  On February 2, 1989, they gave birth to a child, Christine.  At some point in or after December 1989, Pate and the child left Henson and North Carolina, and took up residence in Massachusetts.

On December 22, 1989, Pate brought an *ex parte* Separate Support action under G.L.c. 209 § 32F, against Henson in the Norfolk Division of the Probate and Family Court Department of the Trial Court of the Commonwealth of Massachusetts.  On January 22, 1990, Henson received service of this action by a sheriff in North Carolina.  On or about May 7, 1990, the state court issued a Judgment of Separate Support, which requires Henson to pay to the Department of Revenue of the Commonwealth of Massachusetts one hundred dollars each week for the support of his child, beginning on May 18, 1990.  On March 14, 1991, Pate filed a Complaint for Divorce in the same Massachusetts court under G. L. c. 208, § 1.  On September 4, 1991, the state court issued a Judgment of Divorce Nisi.  Henson does not contend that, at any time, he either contested or filed an appeal of either the Judgment of Separate Support or the Divorce Decree in any state appellate court or session.

Henson is now remarried (to co-plaintiff Jenny Henson), and

4

still lives in North Carolina. However, because of the state judgment, Henson has incurred an obligation and indebtedness to both the Massachusetts Department of Revenue and the United States Internal Revenue Service. Henson claims that Massachusetts has taken various actions to secure this indebtedness from him. In September, 2003, Henson specially appeared in state court (for apparently the first and only time) and made an *ex parte* Motion for Relief to Vacate the Separate Support Judgment. This motion in state court appears to be pending, as Henson does not indicate the results of this special appearance.

The Hensons now incorrectly seek to have this United States Court sit in review of the Massachusetts state court decision, and rule that the state court, the Department of Revenue, and the United States Internal Revenue Service have violated their rights to due process under 42 U.S.C. § 1983, and the Fourteenth Amendment to the Unites States Constitution.

ARGUMENT

I.    <u>Henson's Action Against the Commonwealth Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) Because This Court Lacks Subject Matter Jurisdiction to Entertain the Claim and Henson Has Failed to State A Claim For Which Relief May be Granted.</u>

    A.    <u>The Complaint Does Not Present A Federal Question</u>.

In order to invoke the jurisdiction of the federal court, the Hensons must demonstrate the presence of a federal question

5

as required by 28 U.S.C. § 1331 (1994 ed.)  Henson's allegation
that he was denied due process cannot support a claim against the
State Defendants under 42 U.S.C. § 1983.  *See Will v. Michigan
Dep't of State Police*, 491 U.S. 58, 64-65 (1989) (state agency
not a "person" for purposes of 42 U.S.C. § 1983.)  Because the
Hensons' complaint does not state a federal question, the
District Court should dismiss it for lack of subject matter
jurisdiction.

    B.    <u>The Claim Against the State Defendants Must be
Dismissed For Lack of Subject Matter Jurisdiction
Because the Eleventh Amendment Bars the Claim and
Because the State Court has Judicial Immunity.</u>

The plaintiffs' claim against the State Defendants must be
dismissed pursuant to Fed. R. Civ. P. 12(b)(1), for lack of
subject matter jurisdiction because the eleventh amendment bars
the claim.  "The judicial power of the United States shall not be
construed to extend to any suit in law or equity, commenced or
prosecuted against one of the United States by Citizens of
another State, or by Citizens of any foreign state."  United
States Const., amend. XI.  This provision bars suit against a
state brought by its own citizens, as well, *Papasan v. Allain*,
478 U.S. 265, 276 (1986), whether the suit is in law or equity,
*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01
(1984) and regardless of the relief sought.  *Kentucky v. Graham*,
473 U.S. 159, 167 n. 2 (1985).  "[I]n the absence of consent a
suit in which the State or one of its agencies or departments is

named as the defendant is proscribed [.]"  *Id.* at 101, citing

*Missouri v. Fiske*, 290 U.S. 18, 27 (1933) ("the Amendment

necessarily embraces demands for the enforcement of equitable

rights and the prosecution of equitable remedies when those are

asserted and prosecuted by an individual against a State.")

Accordingly, because the Commonwealth of Massachusetts has not

consented to be sued, the suit against the Commonwealth is

barred.

> C.    This Court Lacks Subject Matter Jurisdiction to
>        Entertain the Plaintiffs' Claim Against the
>        Commonwealth Because the Federal District Court
>        Generally Has No Power to Sit in Direct Review of State
>        Court Decisions.

It is well settled under the doctrine established in *Rooker*

*v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) and *District of*

*Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 482, 486

(1983), that the "lower federal courts have no power whatever to

sit in direct review of state court decisions." *Atlantic Coast*

*Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281,

296 (1970). *Accord*: *Henry v. Connolly,* 910 F.2d 1000, 1002 (1st

Cir. 1990); *Lancellotti v. Fay*, 909 F.2d 15, 17 (1st Cir. 1990);

*Bricker v. Crane,* 468 F.2d 1228, 1231 (1st Cir. 1972), *cert.*

*denied*, 410 U.S. 930 (1973).

The *Rooker-Feldman* doctrine has been found to preclude not

only review of adjudications of a state's highest court, but

7

also, as in this case, the decisions of its lower courts.[3]
*Marquardt v. Supervisor of Department of Assessments and Taxation of Calvert County*, 195 F. Supp. 2d 706 (D. Md. 2002); *Sutton v. Sutton*, 71 F. Supp. 2d 383 (D.N.J. 1999) *affirmed* 216 F. 3d 1077, *cert. denied,* 121 S. Ct. 306.

Challenges to the federal district court's jurisdiction to consider collateral attacks on state court decisions under the *Rooker-Feldman* doctrine are for lack of subject matter jurisdiction, and may be raised at any time by either party or *sua sponte* by the court. *Ackerman v. Doyle*, 43 F. Supp. 2d 265 (E.D.N.Y. 1999). The gravamen of the plaintiffs' complaint is the propriety of various proceedings before a state probate court, including its ordering that a portion of Henson's wages be secured by a state agency (Department of Revenue) and paid to his former wife. The Separate Support Judgment upon which Henson focuses was issued by the state court in 1991. Moreover, the information provided in the Complaint shows that Henson received notice of this action prior to the judgment's issuing, but chose not to participate. Complaint, 2-10, Complaint Exhibit "B". At no time during the intervening *thirteen years* since that judgment issued does Henson allege that he even attempted to appeal the

---

[3]    However, there are Circuits which have held that *Rooker Feldman* only applies to state final judgments from courts of last resort. *See In re Meyerland Co.*, 960 F. 2d 512, 516 (5th Cir. 1992) (en banc).

state judgment to any court of appellate jurisdiction in Massachusetts[4].  It seems clear that, since Henson has slept on any rights he may have had for state appellate review, he is now attempting to manufacture a federal option where one does not exist.  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 23, 25 (1987), *cited in Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999) ;  *see also Guadarrama v. U.S. Department of Housing and Urban Development*, 74 F.Supp. 2d 127, 139 (D.P.R. 1999) (citation omitted); *Vasile v. Dean Witter Reynolds, Inc.*, 20 F.2d 465, 492 (E.D.N.Y. 1998).

D.  The Issues presented by the Hensons are "Inextricably Intertwined" With the State Court's Ruling, and Therefore, Cannot Be Reviewed By This Court.

The *Rooker-Feldman* doctrine bars any suit that seeks to disrupt or "undo" a prior state-court judgment, regardless of whether the state court proceeding afforded the federal court plaintiff a full and fair opportunity to litigate his claim. *Kenmen Engineering v. City of Union*, 314 F. 3d 468 (C.A. 10

---

[4]State appellate paths were presumably available to Henson, which fully satisfy his right to due process.  *See Chongris v. Board of Appeals of Town of Andover*, 811 F.2d 36, 44-45 (1st Cir.) (where hearing and judicial review exist, due process right is not violated).

(Okla.) 2002).

Under the *Rooker-Feldman* doctrine, the lower federal courts may not consider issues either actually presented to and decided by a state court, or constitutional claims that are "*inextricably intertwined*" with the court's ruling. *Friedman's Inc. v. Dunlap*, 290 F. 3d 191 (C.A. 4 (W. Va.) 2002)(*quoting Plyler v. Moore*, 129 F. 3d 728, 731 (4ᵗʰ Circuit 1997)).

A claim is "inextricably intertwined" with a state court judgment if, in order to find in favor of the plaintiff on the claim, the court would have to conclude that the state court wrongly decided issues before it, or would have to otherwise void the judgment. *Lal v. Borough of Kennett Square*, 935 F. Supp. 570, *affirmed* 124 F. 3d 187 (E.D.Pa. 1996). Stated another way, a federal claim is so intertwined with a state judgment when it is not separable from and collateral to the merits of the state court judgment, but is such that the federal court is being called upon to review the state court decision. *Strasen v. Strasen*, 897 F. Supp. 1179 (E.D. Wis. 1995). On this point, the critical issue has been identified as being whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim. *Remer v. Burlington Area School District*, 205 F. 3d 990 (C.A.7 (Wis.) 2000) *on remand* 149 F. Supp. 2d 665, *affirmed* 286 F. 3d 1007.

*See also, Manos v. Caira*, 162 F. Supp. 2d 979 (N.D. Ill. 2001)[5].

Under the *Rooker-Feldman* doctrine, lower federal courts lack subject matter jurisdiction to evaluate such constitutional claims, and thus, the only courts empowered to review a state trial court's order for constitutional error are the state appellate courts and, ultimately, the Supreme Court of the United States. *Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey Police Dept.*, 973 F. 2d 169 (C.A. 3 (N.J.) 1992).

The *Rooker-Feldman* doctrine bars collateral attack on a state court judgment in federal court, even where the plaintiff casts the collateral attack as a violation of his constitutional rights. *Garry v. Geils*, 82 F.3d 1362 (7th Cir. 1996)(federal district court lacked subject matter jurisdiction to review constitutional challenge to claims litigated in a state court condemnation proceeding); *Warburton v. Goord*, 14 F.Supp. 2d 289, 296 (W.D.N.Y. 1998); *Davidson v. Garry*, 956 F.Supp. 265, 268-69 (E.D.N.Y. 1996); *Ackerman v. Doyle*, 43 F.Supp.2d 265, 272-73 (E.D.N.Y. 1999). *Postma v. First Federal Savings & Loan of Sioux*

---

[5]Interestingly, the *Rooker-Feldman* doctrine has been found to preclude the federal district court's consideration of a claim that service of process on the husband in a divorce action by a special order of the court pursuant to a unconstitutionally vague state statute violated his due process rights. *Schmitt v. Schmitt*, 165 F. Supp. 2d 789 (N.D. Ill. 2001) *reconsideration denied* 2002 WL 109359, *affirmed* 324 F. 3d 484.

*City*, 74 F.3d 160, 162 (8th Cir. 1996); *Wright v. Tackett*, 39 F.3d 155 (7th Cir. 1994)(*per curiam*) (action alleging conspiracy to violate civil rights barred by *Rooker-Feldman*), *cert. denied*, 115 S.Ct. 1100 (1995); *Ritter v. Ross*, 992 F.2d 750 (7th Cir. 1993), *cert. denied*, 510 U.S. 1046 (1994) (same). Accordingly, the federal district courts "do not have jurisdiction . . . over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486. *See also, Allen v. Allen*, 48 F.3d 259 (C.A. 7(Ill.) 1995).

   E.   Federal District Courts Are Not Courts of Appeal.

Under the *Rooker-Feldman* doctrine, the federal district courts cannot consider collateral attacks to state court judgments, because such proceedings would amount to an exercise of appellate jurisdiction, and the federal district courts are strictly limited to original jurisdiction. *Ackerman v. Doyle*, 43 F. Supp. 2d 265 (E.D.N.Y. 1999). Accordingly, a party losing in state court is barred from, essentially, seeking appellate review in federal district court based on the losing party's claim that the state judgment itself violates the losing party's rights. *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F. 3d 1163 (C.A.10 (Okla.) 1998). *See also Nollet v. Justices of Trial Court of the Commonwealth of Massachusetts*, 83 F. Supp. 2d 204 (D. Mass.

12

2000), *affirmed* 248 F. 3d 1127.[6]

In this case, if Hensen desired review of the 1990 Separate Support Judgment or the 1991 Divorce Decree, he ought to have properly pursued his state court avenues of appellate review. The relief for which the plaintiff now prays, "would, if granted, effectively void the state court's judgment. Most importantly, the federal court would essentially be acting as an appeals court reviewing the state court judgment, which violates the Rooker-Feldman doctrine." *Hill v.* Town of Conway, 193 F.3d 33,39. *Cf.* *Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 732 (7th Cir. 1994); *Charchenko v. Stillwater*, 47 F.3d 981, 983 (8th Cir. 1994). Therefore, the claim against the Commonwealth must be dismissed for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(6).

        F.   <u>To the Extent that the Hensons Seek a Review of</u>

---

[6]   As analyzed in *Schmitt v. Schmitt*, 165 F. Supp. 2d 789, 796 (N.D. Ill. 2001), (citing *In re James*, 940 F 2d 46, 52 (3rd Cir. 1991) and *In re Gruntz*, 202 F. 3d 1074) some circuit courts have recognized an exception to the protective effect of the *Rooker-Feldman* doctrine, insofar as they opine that, where the state courts do not have personal or subject matter jurisdiction, then the state court's judgment is void *ab initio* and *Rooker-Feldman* does not apply. However, as reasonably concluded in *Schmitt*, "To our knowledge, however, this exception has only been recognized in bankruptcy cases where state court actions have violated the automatic stay; the exception allows federal bankruptcy courts to declare state court actions violating the automatic stay void, thereby preserving the preeminent federal role in bankruptcy proceedings. In the present context [a husband's suit in federal court claiming his due process rights were violated], this exception does not apply." *Schmitt v. Shmitt, supra,* at 796.

the Merits of Their Claim, This Court is Without
Jurisdiction Under the Domestic Relations
Exception to Federal Jurisdiction.

For well over 100 years, the United States Supreme Court has
maintained that "[t]he whole subject of the domestic relations of
husband and wife, parent and child, belongs to the laws of the
States and not to the laws of the United States." *In re Burrus*,
136 U.S. 586, 593-594 (1890). In 1992, the United States Supreme
Court, in *Ankenbrandt v. Richards*, "conclude[d] . . . that the
domestic relations exception, as articulated by this Court since
*Barber* [*v. Barber*, 62 U.S. (21 How.) 582 (1859)], divests the
federal courts of power to issue divorce, alimony, and child
custody decrees." 504 U.S. 689, 703. The Court justified its
"rule that federal courts lack power to issue these types of
decrees because of the special proficiency developed by state
tribunals over the past century and a half in handling issues
that arise in the granting of such decrees." Id., 504 U.S. at
704. Hence, it is clear that this Court lacks the power to
reverse, modify, or stay the order of separate support entered by
the state Family Court. To enjoin the "Assignment of Wages,"
which merely effectuates the Family Court's support order, would
be similarly inappropriate.

Even if the Hensons could surmount *Rooker-Feldman* and evade
the domestic relations exception to federal jurisdiction, their
case should be dismissed because principles of comity and

14

federalism require that domestic relations matters be left to the state courts. Since *Barber v. Barber*, 62 U.S.(21 How.) 582 (1859), the "federal courts have declined to adjudicate actions for divorce, alimony, child support, child custody, and other 'domestic relations' matters." *Fernos-Lopez v. Lopez*, 929 F.2d 20, 22 (1st Cir. 1991), citing, *inter alia*, *Sutter v. Pitts*, 639 F.2d 842, 843-44 (1st Cir. 1981). *See Moore* v. Sims, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern"); *Malachowski v. City of Keene*, 787 F.2d 704, 708 (1st Cir. 1986)(a state's compelling interest in protecting the welfare of children warrants federal court abstention). Even if this Court possessed federal question jurisdiction over this matter, it should abstain, as a matter of comity, from passing on the appropriateness of the Family Court's actions in the Hensons' domestic relations case.

II.   **Because the Verified Complaint Reveals That There Are Pending Issues Before the State Court, this Action Should Be Dismissed by Operation of the *Younger* Abstention Doctrine.**

In addition to the jurisdictional arguments raised above, the Complaint indicates that Henson has a motion pending before the Norfolk Division of the Probate and Family Court Department of the Trial Court of the Commonwealth of Massachusetts. Given that the state court case still seems to be open, this Court should abstain from exercising jurisdiction on the grounds of

federalism and comity[7] outlined in *Younger v. Harris*, 401 U.S. 37
(1971). *Younger* requires that federal courts abstain from
interfering with ongoing state court proceedings when: (1) the
state proceedings[8] are judicial in nature; (2) the proceedings
implicate important state interests; and (3) they provide an
adequate opportunity to raise federal constitutional challenges.
*Bettencourt v. Board of Registration in Medicine*, 904 F.2d 772,
777 (1st Cir. 1990).

This case should be dismissed because each of the three
*Younger* factors is present here. First, it is settled law that,
for purposes of *Younger* abstention, a proceeding is considered
pending until all appellate court remedies have been exhausted.
See *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975);

---

[7] The notion of "comity" includes "'a proper respect for
state functions, a recognition of the fact that the entire country
is made up of a Union of separate state governments, and a
continuance of the belief that the National Government will fare
best if the States and their institutions are left free to perform
their separate functions in their separate ways.' Minimal respect
for the state processes, of course, precludes any presumption that
the state courts will not safeguard federal constitutional rights."
*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S.
423, 431 (1982) (quoting *Younger*, 401 U.S. at 44) (footnote
omitted).

[8] While *Younger* involved a criminal proceeding, its holding
applies in non-criminal judicial proceedings as well. *Middlesex
County Ethics Committee v. Garden State Bar Assn*, *457 U.S. 423, 432
(1982); See also, Moore v. Sims*, 442 U.S. 415 (1979)(applying
*Younger* in state child custody proceeding); *Pennzoil Co. v. Texaco,
Inc.*, 481 U.S. 1 (1986)(involving judgment creditor's efforts to
compel debtor to post bond under state law).

*Malachowski v. City of Keene*, 787 F.2d 704, 708 (1st Cir. 1986). Obviously, the state court proceedings here are judicial in nature. Second, these proceedings implicate important state interests in determining the proper level of support of a previously-dependent spouse and child. "The fact that 'family law' is at issue . . . makes 'abstention' particularly appropriate." *Malachowski*, 787 F.2d at 708 (quoting *Friends of Children, Inc. v. Matava*, 766 F.2d 35, 37 (1st Cir. 1985)). *See also Fernos-Lopez v. Lopez*, 929 F.2d 20, 22 (1st Cir. 1991) (a consideration in the domestic relations exception to federal court jurisdiction is the strong state interest in domestic relations). Lastly, nothing precluded Henson from raising his constitutional claims on appeal from the dispositional determinations of the state court. Thus, the third *Younger* abstention prerequisite is satisfied in that state appellate proceedings gave Henson an opportunity to raise any federal constitutional claims that his rights have been violated by the Family Court.[9]  For these reasons, the principles of *Younger* dictate abstention on the part of this Court.[10]

---

[9]    *See, e.g., Taft v. Taft*, 388 Mass. 331, 446 N.E.2d 331 (1983) (considered and vacated Family Court's order on ground of right of privacy); *Doe v. Roe,* 23 Mass. App. Ct. 590, 504 N.E.2d 659 (1987) (considered and reversed Family Court's order on equal protection grounds).

[10] When, as here, relief is barred by *Younger*, the Court cannot retain jurisdiction but must instead dismiss the complaint. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (*Younger* "contemplates the

III.     The Claims Against The Commonwealth Should Be Dismissed
         Pursuant to Fed. R. Civ. P. 12(b)(6) For Failure to
         State a Claim upon Which Relief Can be Granted.

Dismissal for failure to state a claim is required if "it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."
*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Knight v. Mills*, 836
F.2d 659, 664 (1st Cir. 1987). Here, reading the complaint in
the light most favorable to the Hensons, the Complaint should be
dismissed because (1) the Court should abstain under the *Younger*
doctrine, (2) the Court should abstain from this domestic
relations controversy in the Family Court (to the extent one
still exists) under the general principles of comity and
federalism, and  (3) the Commonwealth did not violate Plaintiffs'
constitutional right to due process. Accordingly,  the Complaint
should be dismissed for failing to make factual allegations
sufficient to support any viable claim reviewable by this Court.

A.     The State Court Is Judicially Immune From Liability.

As stated in *Sims v. Kernan*, 29 F. Supp. 2d 952 (N.D.Ind.

_____

outright dismissal of the federal suit, and the presentation of all
claims, both state and federal, to the state courts"); *Bettencourt,*
904 F.2d at 785 (*Younger* "requires dismissal of plaintiff's claims
for injunctive and declaratory relief").   *See also Brooks v. New
Hampshire Sup. Ct.*, 80 F.3d 633, 637 (1st Cir. 1996) ("If *Younger*
applies . . . abstention is mandatory"); *South Boston Allied War
Veterans Council v. Zobel*, 830 F. Supp. 643, 648-49 (D. Mass. 1993)
("Where all of the requirements for *Younger* abstention are met, the
district court must dismiss the federal action.")

1998), even in cases of severe judicial error – which is not here the case – state courts operating within their jurisdiction are immune from suit in federal court.

> The doctrine of judicial immunity affords state judges absolute immunity from past judicial acts regarding matters within their court's jurisdiction, even if their "exercise of authority is flawed by commission of grave procedural errors."

*Id.* at 958, quoting *Sump v. Sparkman*, 435 U.S. 349, 365 (1978). The state courts enjoy judicial immunity from suit, under 42 U. S. C. § 1983, challenging their conduct. The doctrine of judicial immunity protects judges from individual liability under Section 1983, except where they act completely without jurisdiction. See *Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts*, 83 F. Supp. 2d 204 (D. Mass. 2000); *Slotnik v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980). Because the state court is protected by the doctrine of judicial immunity, the Hensons may not recover damages under Section 1983, and therefore, their claims for damages must be dismissed.

IV    <u>The Hensons Are Not Entitled to Injunctive Relief</u>.

In addition to the *Younger* Abstention Doctrine, the Hensons' demand for injunctive relief is barred by the operation of the Anti-Injunction Act and because they have not otherwise demonstrated the prerequisites for injunctive relief.

A.    <u>The Anti-Injunction Act Prohibits this Court from Enjoining the State Court's Order or Declaring the Constitutionality of the State Court's Procedures</u>.

19

The Hensons' Complaint indicates that there is a motion pending before the state family court.  Accordingly, the Hensons may not seek to have this Court act to interfere with that state court procedure.

The Anti-Injunction Act (the "Act") states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C.A. § 2283 (West 1994).  The Act has been strictly applied and its three explicit exceptions narrowly construed. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) ("the exceptions are narrow and are not to be enlarged by loose statutory construction"); *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (opinion of Rehnquist, J.) ("Suffice it to say that the Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act."); *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970) ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.  The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts

20

leads inevitably to that conclusion."); *Casa Marie, Inc. v. Superior Ct. of Puerto Rico*, 988 F.2d 252, 261 (1st Cir. 1993).

The Hensons have cited no Act of Congress expressly authorizing this Court to enjoin further proceedings in the state court. *Cf. Vendo*, 423 U.S. at 631-32 (Clayton Act is not an express exception to Anti-Injunction Act); *Casa Marie*, 988 F.2d at 261 ("we are unable to discern any statutory language or legislative history which indicates that Congress expressly excepted [claims under the Fair Housing Act] from the operation of the Anti-Injunction Act"). The second and third exceptions to the Act -- "necessary in aid of [the federal court's] jurisdiction" and "to protect or effectuate [the federal court's] judgments" -- are inapplicable because there is no prior federal action requiring jurisdictional assistance and there is no federal court judgment to be protected or effectuated. *See Chick Kam Choo*, 486 U.S. at 147 (the "protect or effectuate" exception, known as the "relitigation exception," was "designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court").

To the extent the Hensons explicitly seek to enjoin a pending or current proceeding before a court of the Commonwealth of Massachusetts, and no exception applies, the plain language of the Act precludes injunctive relief. *See Gloucester Marine Railways v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir. 1988)

21

(noting that the term "proceedings" in the Act is "comprehensive" and "includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process"). The motion for injunctive relief must therefore be denied. See also *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 515-16 (1955) ("This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions.")

The Act also requires the denial of declaratory relief. See *Gloucester Marine Railways*, 848 F.2d at 15 (although the Act does not by its terms prohibit declaratory judgments, declaratory relief should nonetheless be refused if it "would have essentially the same effect as an injunction") (citing 17 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4222 at 316 (1978)); *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 505-07 (5th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989) (*en banc*) ("we follow the weight of authority in holding that if an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction"); *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act precludes declaratory judgment that a state tax law is unconstitutional "because there is little practical difference between injunctive

22

and declaratory relief.")  A declaratory judgment rendered by
this Court that any pending or future act of the state court
would violate the Hensons' constitutional rights would be *res
judicata* in the state court proceeding and would interfere with -
- if not terminate -- the state court proceeding "as surely as an
injunction."  *Texas Employers' Ins Ass'n*, 862 F.2d at 505.
Furthermore, a declaratory judgment could itself be enforced by
federal court injunction pursuant to 28 U.S.C. § 2202, thereby
achieving indirectly what the Act directly prohibits.  *See id.*
Consequently, to the extent that the Verified Complaint seeks
declaratory relief, it must be dismissed.

    B.    <u>The Hensons Have Not Otherwise Met the Prerequisites
           for Injunctive Relief</u>.

    The First Circuit's standard for issuance of a preliminary
injunction is well settled:

> The Court must find:  (1) that plaintiff will
> suffer irreparable injury if the injunction is not
> granted; (2) that such injury outweighs any harm
> which granting injunctive relief would inflict on
> the defendant; (3) that plaintiff has exhibited a
> likelihood of success on the merits; and (4) that
> the public interest will not be adversely affected
> by the granting of the injunction.

*Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d
1006, 1009 (1st Cir. 1981).  "Of these four factors, the
probability-of-success component . . . has been regarded by [the
First Circuit] as critical . . . ."  *Lancor v. Lebanon Housing
Authority*, 760 F.2d 361, 362 (1st Cir. 1985); *accord B.P.G.*

*Autoland Jeep-Eagle, Inc. v. Chrysler Credit Corp.*, 785 F. Supp. 222, 227 (D. Mass. 1991) ("most critical" component).  "Even excruciatingly obvious injury is irrelevant when a plaintiff has not demonstrated likely success on the merits." *Weaver v. Henderson*, 984 F.2d 11, 14 n. 5 (1st Cir. 1993).

For all of the reasons stated in this Memorandum, the Hensons have failed to show a likelihood that they will succeed on the merits of this case.  Moreover, the Hensons have produced no support or argument to show how their interest in obtaining injunctive relief are consistent with the public good, or that they will irreparably suffer should the injunction not issue. In contrast, as described in detail, above, undue federal judicial involvement in a state court matter involving domestic issues has clearly negative public interest implications.

<u>CONCLUSION</u>

For the foregoing reasons, the State Defendants' Motion to Dismiss should be allowed.  Additionally, as the Hensons have not shown that they have a likelihood of success on the merits, or that they are otherwise entitled to preliminary or permanent injunctive relief, their request for injunctive relief should be denied.

Respectfully submitted,

**ALAN LEBOVIDGE, AS COMMISSIONER OF REVENUE FOR THE COMMONWEALTH OF MASSACHUSETTS, AND CHIEF ADMINISTRATIVE JUSTICE OF THE MASSACHUSETTS TRIAL**

24

**COURTS,**

By their attorney

THOMAS F. REILLY
ATTORNEY GENERAL

_____
Steven E. Thomas, BBO# 496465
Assistant Attorney General
Government Bureau
One Ashburton Place, Room 2019
Boston, MA 02108-1698
(617) 727-2200, ext. 2085

Dated: July 1, 2004

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above
document was served upon the attorney of
record for each other party by mail (by hand)

on ___2/1/04___

_____

---

25